1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

AMANDA M. LAWSON,                                    NO.  C13-5049-JCC-JPD

9
                                    Plaintiff,

10
        v.                                                    REPORT AND
                                                              RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12
                                    Defendant.

13

14          Plaintiff Amanda M. Lawson appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her applications for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

19                          I.        FACTS AND PROCEDURAL HISTORY

20          At the time of the administrative hearing, plaintiff was a thirty-one year old woman

21   with the equivalent of a high school education.  Administrative Record ("AR") at 24, 34, 167.

22   Her past work experience includes employment as a cashier, waitress, and sales clerk.  AR at

23   38.  Plaintiff was last gainfully employed in 1999.  AR at 167.

24

REPORT AND RECOMMENDATION - 1

On April 21, 2011, plaintiff filed a claim for SSI payments, alleging an onset date of September 1, 2009.  AR at 38.[1]  Plaintiff asserts that she is disabled due to mental impairments, including bipolar II disorder and depression.  AR at 166.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 90-92, 98-100.  Plaintiff requested a hearing, which took place on August 16, 2012.  AR at 31-47.  On September 21, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 24-26.  Plaintiff's request for review by the Appeals Council was denied, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On January 28, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[1] Although plaintiff also filed a Title II application for a period of disability and disability insurance benefits ("DIB") on April 25, 2011, during the administrative hearing plaintiff amended her application to "an SSI only claim" with an alleged onset date of September 1, 2009.  AR at 38.  The ALJ's written decision acknowledged that "at the hearing, the claimant, through her representative, voluntarily elected to withdraw her request as it pertains to the application for a period of disability and disability insurance benefits."  AR at 14.  As a result, the ALJ noted that "the remainder of this decision addresses only the claimant's currently pending application for supplemental security income."  AR at 14.  The Commissioner's final decision regarding plaintiff's Title XVI application is therefore the only issue before the Court.

REPORT AND RECOMMENDATION - 2

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Lawson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

_____

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1    When the claimant's impairment neither meets nor equals one of the impairments listed

2   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

3   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

4   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

5   to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

6   the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

7   true, then the burden shifts to the Commissioner at step five to show that the claimant can

8   perform other work that exists in significant numbers in the national economy, taking into

9   consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

10   404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

11   claimant is unable to perform other work, then the claimant is found disabled and benefits may

12   be awarded.

13                        V.      DECISION BELOW

14       On September 21, 2012, the ALJ issued a decision finding the following:

15       1.    The claimant met the insured status requirements of the Social
               Security Act through June 30, 2001.
16

17       2.    The claimant has not engaged in substantial gainful activity since
               September 1, 2009, the amended alleged onset date.

18       3.    The claimant has the following severe impairments: mood disorder.

19       4.    The claimant does not have an impairment or combination of
               impairments that meets or medically equals the severity of one of the
20             listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

21       5.    After careful consideration of the entire record, the undersigned finds
               that the claimant has the residual functional capacity to perform a full
22             range of work at all exertional levels but with the following
               nonexertional limitations:  The claimant is able to perform simple,
23             repetitive tasks.  She should not interact with the general public, and
               can have occasional contact with coworkers and supervisors.  Due to
24             her combined impairments and treatment, she would be off task for
               12% of a normal workday.

REPORT AND RECOMMENDATION - 5

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born on XXXXX, 1981 and was 28 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.[3]

8.      The claimant has a limited education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision.

AR at 17-25.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in evaluating the opinions of examining psychologist Shannon Ledesma Jones, Ph.D., or non-examining physicians Kristine Harrison, Psy.D. and Michael Brown, Ph.D.?

2.      Did the ALJ provide germane reasons to reject the "other source" opinions of treating psychotherapist Jessica Wambold, M.A., M.H.C., and treating nurse practitioner Michael Jackson, A.R.N.P.?

3.      Did the ALJ err in evaluating plaintiff's credibility?

4.      Did the ALJ err at step five?

Dkt. 16 at 1; Dkt. 17 at 3.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1

VII.     DISCUSSION

2

A.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

3

1.     *Standards for Reviewing Medical Evidence*

4

As a matter of law, more weight is given to a treating physician's opinion than to that

5

of a non-treating physician because a treating physician "is employed to cure and has a greater

6

opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

7

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

8

physician's opinion, however, is not necessarily conclusive as to either a physical condition or

9

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

10

*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

11

physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

12

contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

13

157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

14

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15

making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

16

merely state his/her conclusions.  "He must set forth his own interpretations and explain why

17

they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

18

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

19

*Reddick*, 157 F.3d at 725.

20

The opinions of examining physicians are to be given more weight than non-examining

21

physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

22

uncontradicted opinions of examining physicians may not be rejected without clear and

23

convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

24

1    physician only by providing specific and legitimate reasons that are supported by the record.

2    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

3          Opinions from non-examining medical sources are to be given less weight than treating

4    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

5    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

6    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

7    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

8    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

9    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

10   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

11   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

12               2.    *Shannon Ledesma Jones, Ph.D.*

13         On July 11, 2011, Dr. Jones conducted a psychological evaluation of plaintiff.  AR at

14   236-40.  Although "formal intellectual testing" or "psychological testing was not conducted,"

15   Dr. Jones did perform a mental status examination. AR at 239.  Dr. Jones noted that

16   "throughout the interview it did not appear that she had any difficulty tracking simple or

17   complex ideational material.  She displayed an adequate fund of knowledge[.]"  AR at 238.

18   Dr. Jones noted that plaintiff "had some difficulty recalling the dates and details relating to her

19   social, academic and health history.  She could recall her activities from the day before the

20   evaluation, [and] recalled 3/3 items after 5 minutes."  AR at 238.  Plaintiff "acknowledged

21   some difficulty with attention and concentration," but "was able to recite the alphabet and

22   name the days of the week backwards in order.  She was able to spell WORLD forwards and

23   backwards."  AR at 238.  Plaintiff could perform digit spans forward and backwards, perform

24

serial 3's and serial 7's, "answer all but one of the math questions correctly," and interpret proverbs in an appropriate manner. AR at 238.

Dr. Jones noted that plaintiff "was anxious throughout the evaluation. Her focus and concentration appeared to be somewhat impaired." AR at 239. Plaintiff "appeared to be distressed and overwhelmed regarding her on-going issues with mood cycling. Ms. Lawson reports that she feels stuck." AR at 239. Dr. Jones concluded that plaintiff "meets criteria for having experienced a major depressive episode including: a lack of motivation, fatigue, broken sleep, lethargy, difficulty with focus and concentration, agitation, anxiety and anhedonia." AR at 239. Dr. Jones asserted that plaintiff's prognosis was "guarded," as plaintiff was "struggling to manage her mood and maintain 'activities of daily living.'" AR at 239.

Dr. Jones diagnosed plaintiff with bipolar disorder, current episode depressed, and assessed a GAF score of 50. AR at 240.[4] Dr. Jones concluded that plaintiff "currently does not appear to have the ability to withstand the pressures associated with day-to-day work activity and she may not be able to carry out work-related activities with adequate pace and perseverance." AR at 239. In addition, plaintiff "has the ability to interact appropriately with others including supervisors and coworkers, but may not be expected to maintain a regular work schedule or complete a normal work day without interruptions due to her difficulty in managing her mood." AR at 239.

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

REPORT AND RECOMMENDATION - 9

1    The ALJ summarized Dr. Jones' psychological examination results in detail, and noted

2    that "these clinical findings support a conclusion that the claimant could perform at least

3    simple, repetitive tasks in a work environment with some social limitations."  AR at 21.

4    However, the ALJ gave Dr. Jones' opinion about plaintiff's functional limitations "little

5    weight," because "her opinion is inconsistent with her clinical findings, which included normal

6    cognition on mental status exam."  AR at 23.  The ALJ also found that "her opinion is

7    inconsistent with the claimant's report that she spent most of her time doing childcare.  In

8    addition, her opinion is inconsistent with the record as a whole, which indicates that the

9    claimant's mood improved and stabilized with treatment."  AR at 23.

10    Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for

11    rejecting Dr. Jones' opinion that plaintiff does not have the ability to withstand the pressures

12    associated with day-to-day work activity and would not be expected to maintain a regular work

13    schedule or complete a normal work day without interruptions due to her difficulty in

14    managing her mood.  Dkt. 16 at 9 (citing AR at 239).  First, plaintiff asserts that "the ALJ

15    failed to cite any inconsistencies between Dr. Jones' assessment and her clinical findings," and

16    "in fact, her opinion is quite consistent with her clinical findings during the examination."  *Id*.

17    For example, "Dr. Jones noted several times in her report that Ms. Lawson appeared very

18    anxious.  She observed difficulty staying focused through the evaluation as well as some

19    difficulty recalling remote and recent information."  *Id*. (citing AR at 238).  With respect to the

20    ALJ's assertion that Dr. Jones' opinion was inconsistent with plaintiff's testimony that she

21    spends most of her time doing childcare, plaintiff asserts that "the ALJ failed to take into

22    account the fact that Ms. Lawson lives with her mother and receives help caring for her

23    children."  *Id*.  In any event, plaintiff argues that "[c]aring for one's children at home does not

24

1    at all demonstrate the capability to sustain the rigors of full time employment in the

2    competitive labor market." *Id.*

3            Finally, plaintiff argues that Dr. Jones' assessment is actually consistent with "the

4    record as a whole." *Id.*  Plaintiff argues that "treatment records from [other source providers]

5    Jackson and Wambold" are consistent with Dr. Jones' assessment, as they reflect observations

6    of "anxiety, depression, low energy, and mood functioning," and Drs. Harrison and Brown's

7    assessments that plaintiff is limited in her ability to maintain concentration, persistence, and

8    pace. *Id.* at 11.  Plaintiff asserts that "it is also consistent with Ms. Lawson's mental

9    breakdown in April of 2012, and checking herself into the emergency room for suicidal

10   ideation . . . The record does not at all demonstrate that she experienced improvement

11   sufficient to sustain the rigors of full-time employment on a regular and continuing basis." *Id.*

12   Plaintiff contends that "absent evidence that the claimant has improved enough to return to

13   work, an ALJ's conclusion that the claimant is 'responding to treatment' is not a valid reason

14   or rejecting a medical opinion." *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.

15   1989)).

16           The Commissioner responds that an ALJ may properly reject an examining doctor's

17   opinion of a claimant's limited abilities when it is contradicted by that doctor's own clinical

18   notes or other recorded observations.  Dkt. 17 at 7 (citing *Bayliss v. Barnhart*, 427 F.3d 1211,

19   1216 (9th Cir. 2005)).  With respect to the ALJ's finding that Dr. Jones' assessed limitations

20   are inconsistent with plaintiff's report that she spent most of her time doing childcare, the

21   Commissioner asserts that an ALJ may reject a doctor's opinion that is inconsistent with a

22   claimant's level of activities, which includes raising two young children with no significant

23   assistance.  *Id.* (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)).  Contrary to

24   plaintiff's argument that the ALJ failed to account for plaintiff's testimony that she lived with

REPORT AND RECOMMENDATION - 11

1    her mother and received help caring for her children, the Commissioner points out that "the

2    ALJ specifically noted in his decision that 'she lives with her mom.  Her mom provides some

3    help with childcare, but her mother also works at home for Alaska Airlines.'"  *Id*. (citing AR at

4    21, 35, 37.  In addition, the ALJ noted that plaintiff "has reported that she is the primary

5    caregiver of her two children, ages 11 and 3[.]"  *Id*. (citing AR at 21, 293).  The Commissioner

6    further argues that the ALJ properly rejected Dr. Jones' opinion as being "inconsistent with the

7    record as a whole, which indicates that the claimant's mood improved and stabilized with

8    treatment."  *Id.* (citing AR at 23, 223-24, 228, 230, 298, 362).  Impairments that can be

9    controlled effectively with medication are not disabling for the purpose of determining

10   eligibility for SSI benefits.  *Id.* (citing *Warre v. Commissioner*, 439 F.3d 1001, 1006 (9th Cir.

11   2006) and *Allen v. Sec. of Health & Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984)).

12          The Commissioner further contends that plaintiff's reliance on *Rodriguez v. Bowen* is

13   misplaced.  Specifically, in *Rodriguez* the Ninth Circuit found that "the ALJ's conclusion that

14   Rodriguez was responding to treatment also does not provide a clear and convincing reason for

15   disregarding Dr. Pettinger's opinion.  No physician opined that any improvement would allow

16   Rodriguez to return to work."  *Rodriguez*, 876 F.2d at 763.  The Commissioner asserts that in

17   this case, "the ALJ was relying on more than just the fact that plaintiff improved with

18   treatment as he also relied on the inconsistency of Dr. Jones' opinion with the fact that

19   Plaintiff's mood had both improved and stabilized with treatment."  *Id*. at 7-8 (citing AR at

20   23).  Furthermore, unlike in *Rodriguez*, the Commissioner argues that the state agency

21   psychologists Dr. Harrison and Dr. Brown both noted that plaintiff's moods were generally

22   well controlled with her psychiatric medication and her functioning deteriorated when she went

23   off her medications.  *Id*. at 8 (citing AR at 58, 62, 74, 224).  Finally, the Commissioner asserts

24

REPORT AND RECOMMENDATION - 12

1    that *Rodriguez* did not address the fact that impairments amenable to control are not disabling.

2    *Id.* (citing *Warre*, 439 F.3d at 1006).

3         The Court agrees with the Commissioner that the ALJ provided several specific and

4    legitimate reasons to afford "little weight" to Dr. Jones' conclusions.  As discussed above,

5    plaintiff performed well on Dr. Jones' mental status exam.  Dr. Jones acknowledged that

6    "throughout the interview it did not appear that she had any difficulty tracking simple or

7    complex ideational material.  She displayed an adequate fund of knowledge[.]"  AR at 238.

8    Plaintiff reported having difficulty with concentration and attention, but was able to recall 3/3

9    items after 5 minutes, recite the alphabet and name the days of the week backwards in order,

10   spell WORLD forwards and backwards, perform digit spans forward and backwards, perform

11   serial 3's and serial 7's, answer all but one of the math questions correctly, and interpret

12   proverbs in an appropriate manner.  AR at 238. Thus, the ALJ could reasonably conclude that

13   Dr. Jones' opinion that plaintiff's focus and concentration were impaired and she was unable to

14   withstand the pressures associated with day-to-day work activity with adequate pace and

15   perseverance was inconsistent with plaintiff's performance during the objective testing, which

16   reflected "normal cognition on mental status exam." AR at 23, 239.  As the ALJ noted, "these

17   clinical findings support a conclusion that the claimant could perform at least simple, repetitive

18   tasks in a work environment with some social limitations."  AR at 21.  This was a specific and

19   legitimate reason for the ALJ to afford Dr. Jones' opinion less weight.

20        The ALJ also did not err by finding Dr. Jones' opinions inconsistent with plaintiff's

21   report that she spends most of her time performing childcare duties.  AR at 23.  In *Rollins*, the

22   Ninth Circuit held that an ALJ did not err by rejecting a doctor's recommendations as being

23   implausible and inconsistent with the actual level of activity the claimant engaged in "by

24   maintaining a household and raising two young children, with no significant assistance from

1    her ex husband." *Rollins*, 261 F.3d at 856.  Similarly, in this case, plaintiff has reported that

2    although she lives with her mother and "she helps me," her mother also works from home for

3    Alaska Airlines and therefore plaintiff is the "primary caregiver of her two children, ages 11

4    and 3." AR at 21, 37, 293.  During the hearing, plaintiff testified that she performed daily

5    childcare including feeding, bathing, dressing, and playing with her children, and soon she will

6    be taking her oldest child to and from school on a daily basis.  AR at 34-35.  The fact that

7    plaintiff's daily activities, which included caring for two young children, were inconsistent

8    with Dr. Jones' opinion was a specific and legitimate reason for the ALJ to afford Dr. Jones'

9    opinions less weight.

10          Finally, the Ninth Circuit's decision in *Rodriguez v. Bowen*, the case cited by the

11   plaintiff, is distinguishable from this case.  In *Rodriguez*, the ALJ had asserted in a conclusory

12   fashion that a treating physician's opinion was unsupported by clinical findings, and then

13   asserted that the claimant was responding to treatment.  The court observed that this not a clear

14   and convincing reason to reject the treating physician's opinion, as "no physician opined that

15   any improvement would allow Rodriguez to return to work," and there was no evidence the

16   claimant was malingering. *Rodriguez*, 876 F.2d at 763.  By contrast, in this case the state

17   agency psychologists Dr. Harrison and Dr. Brown both opined that plaintiff was capable of

18   working, because plaintiff's moods were generally well controlled with her psychiatric

19   medication and that her functioning only deteriorated when she went off her medications.  AR

20   at 58, 62, 74, 224.  For example, Dr. Brown opined that "given the lack of corroborating

21   evidence to illustrate dysfunction . . . she should be work capable despite the opinion of Dr.

22   Jones." AR at 60.  Finally, more recent Ninth Circuit cases have clearly recognized that

23   impairments amenable to control with medication or other conservative treatment are not

24

REPORT AND RECOMMENDATION - 14

1    disabling. *See Warre*, 439 F.3d at 1006 ("Impairments that can be controlled effectively with

2    medication are not disabling for the purpose of determining eligibility for SSI benefits).

3            The ALJ thoroughly explained his conclusion that "the record supports a finding that

4    the claimant's symptoms have improved and stabilized with treatment." AR at 21.  For

5    example, the ALJ noted that "at treatment intake in May of 2010, she reported that Effexor had

6    been helpful to her in the past, but she had been out of medications for 3 months.  Her mood

7    improved with medication management." AR at 21.  In April of 2012, plaintiff reported

8    "suicidal ideation without attempt after her grandmother passed away.  She started counseling.

9    By July of 2012, she was reporting that she was 'doing really good overall' and was on less

10   medication." AR at 21 (internal citations omitted).  Similarly, in August 2012, plaintiff

11   reported "she was doing well with medications, her mood was less stable, she had no anxiety,

12   she was doing O.K. with clonazepam, and her sleep was good." AR at 21.  Thus, the ALJ

13   could reasonably conclude that Dr. Jones' opinion was "inconsistent with the record as a

14   whole, which indicates that the claimant's mood improved and stabilized with treatment." AR

15   at 23.  The ALJ properly provided specific and legitimate reasons, supported by substantial

16   evidence in the record, to discount Dr. Jones' opinions.

17                       3.    *Kristine Harrison, Psy.D.*

18           The ALJ asserted that at the initial level, "State agency psychologist Kristine Harrison

19   Psy.D. opined that the claimant would have no limitation in understanding and memory, social

20   functioning, or adaptive functioning.  She found that the claimant 'may have some bad days

21   where [she] will need to miss work, [but] there is no certainty that those missed days would

22   necessarily be beyond the acceptable limit and that she could indeed maintain employment.'"

23   AR at 22.  The ALJ found that "the opinion[] of [Dr.] Harrison . . . [is] consistent with the

24   objective medical evidence, which includes normal cognition on mental status exam.  [She]

1    adequately consider[s] the claimant's subjective complaints, and the aforementioned daily

2    activities such as childcare." AR at 22. However, her "opinions are somewhat vague. Dr.

3    Harrison indicated that the claimant may need to miss some work 'beyond the acceptable

4    limit,' but she did not quantify the amount of time the claimant might miss." AR at 22. The

5    ALJ asserted that "for these reasons, the undersigned gives the State agency mental

6    assessments some weight." AR at 22.

7            Plaintiff asserts that although the ALJ acknowledged that Dr. Harrison's opinions "are

8    consistent with the objective medical evidence," he only gave this aspect of her opinion "some

9    weight" because "she did not quantify the amount of time the claimant might miss." Dkt. 16 at

10   13 (citing AR at 22). Plaintiff argues that "this is irrelevant because the vocational expert

11   stated that missing any work during the first year of employment would lead to termination.

12   Furthermore, if the ALJ felt that this physician's opinion was too vague, he should have re-

13   contacted the doctor for a more specific opinion." *Id*. at 14. Because the ALJ did not do so,

14   "he failed in his duty to fairly and fully develop the record." *Id.*

15           The Commissioner responds that "an ALJ may reject the opinion of a nonexamining

16   doctor by reference to specific evidence in the record." Dkt. 17 at 12 (citing *Sousa v.*

17   *Callahan*, 1432 F.3d 1240, 1244 (9th Cir. 1998)). The Commissioner asserts that "a

18   reasonable inference from the ALJ's above-quoted statement . . . is that he rejected Dr.

19   Harrison's opinion about Plaintiff needing to miss work," as this aspect of Dr. Harrison's

20   opinion did not appear in the ALJ's RFC assessment. *Id*. (citing AR at 20, 62, 73, 81). The

21   Commissioner argues that "to the extent that Plaintiff takes issue with the ALJ's decision to

22   reject Dr. Harrison's opinion about missing work based on her own views that Dr. Harrison's

23   opinion supported her position given the vocational expert's testimony that missing any work

24

1   during the first year of employment would lead to termination . . . this is not a sufficient basis

2   to overturn the ALJ's decision." *Id.* at 15.

3          Plaintiff responds that "while Dr. Harrison did not specifically state how much work

4   Ms. Lawson would miss, she clearly found some work would be missed.  Thus, the ALJ was

5   obligated to either include a need to miss some work in her hypothetical to the vocational

6   expert or to provide valid reasons for rejecting the assessed need to miss work.  The ALJ did

7   neither." Dkt. 18 at 5. Plaintiff asserts that "in light of the vocational expert's testimony, it

8   does not matter how much work would be missed, only that any work would be missed . . . In

9   addition, there was no contradicting opinion cited to by the ALJ or the Commissioner that

10  would refute the opinion that Ms. Lawson would need to miss work.  Rather, the number of

11  mental health appointments she attended and her periods of depression support the fact that

12  Ms. Lawson would miss work during her first year of employment." *Id.*

13         The Commissioner is correct.  As mentioned above, Dr. Harrison opined that "File data

14  show Client moods generally well controlled with use of Psych TX, with deterioration of

15  function when goes off her Psych TX. Although she may have some bad days where [she] will

16  need to miss work, there is no certainty that those missed days would necessarily be beyond

17  the acceptable limit and that she could indeed maintain employment."  AR at 62.

18          The ALJ rejected Dr. Harrison's opinion that plaintiff "may have some bad days where

19  [she] will need to miss work" as "vague," because Dr. Harrison "did not quantify the amount

20  of time the claimant might miss." AR at 22.  This was a specific and legitimate reason to

21  discount Dr. Harrison's opinion that plaintiff's "bad days" would result in missed work, but not

22  necessary "beyond the acceptable limit" for employment.  AR at 62.  As discussed above, the

23  ALJ acknowledged the vocational expert's testimony that no "unscheduled" absences would be

24  tolerated during the first year of employment, and asserted that "the medical record does not

REPORT AND RECOMMENDATION - 17

support a finding that the claimant would have unscheduled absences, and that limitation does

not appear in the [RFC] set out in this decision." AR at 25.  Especially in light of the ALJ's

finding that "the medical record does not support a finding that the claimant would have

unscheduled absences," the ALJ did not err by rejecting Dr. Harrison's opinion that plaintiff

"may miss work" as "vague."  The ALJ considered the record sufficient to make a finding on

this issue, and therefore his duty to further develop the record was not triggered by Dr.

Harrison's statement.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An

ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or

when the record is inadequate to allow for proper evaluation of the evidence.").  The ALJ did

not err in evaluating Dr. Harrison's opinion.

   B.   The ALJ Did Not Err in Evaluating the "Other Source" Evidence

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well

as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

his/her ability to work is competent evidence, and cannot be disregarded without comment.

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-

acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR")

06-03p (noting that because such persons "have increasingly assumed a greater percentage of the

treatment and evaluation functions previously handled primarily by physicians and

psychologists," their opinions "should be evaluated on key issues such as impairment severity

and functional effects, along with the other relevant evidence in the file.").  If an ALJ chooses to

discount testimony of a lay witness, he must provide "reasons that are germane to each witness,"

and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

1              1.      *Jessica Wambold, M.A., M.H.C.*

2          On July 23, 2012, Ms. Wambold completed a mental medical source statement form in

3      which she opined that plaintiff had moderate, marked, and severe mental limitations.  AR at

4      359-61.  Ms. Wambold also opined that if plaintiff was currently attempting to work a 40-hour

5      per week schedule, it was more probable than not that she would miss some work due to

6      mental impairments and that she would miss on average 4 or more days per month. AR at 361.

7          The ALJ gave Ms. Wambold's opinion little weight because she "gave no supporting

8      clinical findings, and her notes do not reflect clinical findings to support a conclusion that the

9      claimant would be absent from work 4 or more days per month.  On the contrary, in July of

10     2012, the claimant told Ms. Wambold that she was 'doing really good overall' and was on less

11     medication."  AR at 23.  In addition, plaintiff "met Ms. Wambold at a playground for therapy

12     as she was taking care of her two children."  AR at 23.  Finally, the ALJ also noted that "in

13     August of 2012, she reported she was doing well with medications, her mood was stable, she

14     had no anxiety, she was doing O.K. with clonazepam, and her sleep was good."  AR at 23.

15         Plaintiff contends that Ms. Wambold's notes do reflect clinical findings to support her

16     conclusion that plaintiff would be absent from work four or more days per month, because she

17     was treating Ms. Lawson at the time she experienced serious suicidal ideation and

18     contemplated admitting herself into inpatient care because of her poor mental health.  Dkt. 16

19     at 12.  Plaintiff argues that her treatment notes reflect difficulty concentrating, depression,

20     irritability, thoughts of suicide, and anxiety.  *Id.* (citing AR at 293-95).  Plaintiff asserts that

21     "these clinical observations support her opinion that Ms. Lawson would miss four or more

22     days per month."  *Id.*

23         The Commissioner responds that "an ALJ need not accept even a treating doctor's

24     opinion that is brief and conclusory in form with little in the way of clinical findings to support

1    its conclusion."  Dkt. 17 at 9 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

2    The Commissioner argues that plaintiff disagrees with the ALJ's reasons for rejecting Ms.

3    Wambold's opinion "based on aspects of Ms. Wambold's treatment notes that Plaintiff

4    believes supports her opinion.  However, Ms. Wambold did not specifically link her opinions

5    of Plaintiff's mental limitations to the factors in her treatment notes that Plaintiff points to.

6    The ALJ provided germane reasons to reject Ms. Wambold's opinion of Plaintiff's mental

7    limitations and that she would miss work 4 or more days per month."  *Id.* at 10.

8           The Court finds that the ALJ provided at least one germane reason for discounting

9    Ms. Wambold's opinion.  Ms. Wambold's medical source statement, dated July 23, 2012, is

10   brief, conclusory, and contained no explanation or clinical findings to support the check-the-

11   box functional limitations she identified, including her estimation that plaintiff would miss 4 or

12   more days of work per month.  AR at 359-61.  As argued by the Commissioner, an ALJ need

13   not accept even a treating doctor's opinion that is brief and conclusory in form with little in the

14   way of clinical findings to support its conclusion.  *See Magallanes*, 881 F.2d at 751.  Thus, the

15   ALJ reasonably observed that Ms. Wambold "gave no supporting clinical findings" for her

16   assessed functional limitations.  AR at 23.  Without more, the lack of supporting clinical

17   findings, or any other explanation for Ms. Wambold's check-the-box conclusions in her

18   medical source statement, was a germane reason for the ALJ to reject her opinion.

19          As mentioned above, the ALJ further opined that Ms. Wambold's clinical notes also

20   "do not reflect clinical findings to support a conclusion that the claimant would be absent from

21   work 4 or more days per month.  On the contrary, in July of 2012, the claimant told Ms.

22   Wambold that she was 'doing really good overall' and was on less medication."  AR at 23.  In

23   addition, the ALJ also noted that "in August of 2012, she reported she was doing well with

24   medications, her mood was stable, she had no anxiety, she was doing O.K. with clonazepam,

1    and her sleep was good." AR at 23. Plaintiff contends that the ALJ should have afforded

2    greater weight to Ms. Wambold's clinic notes from April 2012, which reflected such severe

3    symptoms as suicidal ideation and plaintiff's contemplation of admitting herself to inpatient

4    care for her grief after her grandmother passed away. AR at 293-95. However, the Court finds

5    that the ALJ did not err by pointing out that Ms. Wambold's contemporaneous treatment notes

6    from July 2012 did not fill in the gaps left by her July 23, 2012 medical source statement. On

7    the contrary, Ms. Wambold's clinical notes reflected improvement of plaintiff's symptoms

8    between April and July 2012. AR at 298. As the ALJ pointed out, Ms. Wambold met plaintiff

9    at a playground on July 9, 2012, while her children played outside. She noted that plaintiff

10   "reported 'doing really good overall,'" and although she "noticed that she feels more depressed

11   towards the end of the month . . . this may be related to both her menstrual cycle and 'running

12   out of money so we can't do anything.'" AR at 298. Plaintiff agreed to begin a self-esteem

13   work book with Ms. Wambold, and working on "changing/restructuring thoughts." AR at 298.

14       As noted above, the ALJ is responsible for determining credibility, resolving conflicts

15   in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d

16   at 1039. When the evidence is susceptible to more than one rational interpretation, it is the

17   Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be

18   possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that

19   plaintiff's interpretation is the only rational interpretation. The ALJ properly provided specific

20   and germane reasons for discounting Ms. Wambold's medical source statement.

21              2.    *Michael Jackson, A.R.N.P.*

22       Treating nurse practitioner Mr. Jackson opined in an August 3, 2011 assessment form

23   for the Washington Department of Social and Health Services that plaintiff has depression.

24   AR at 254. When asked if this diagnosis was supported by testing or lab reports, he indicated

REPORT AND RECOMMENDATION - 21

1    "yes" and wrote, "by history."  AR at 254.  When asked to describe any specific limitations, he

2    wrote simply that plaintiff's depression limited her ability to "interact with people," and

3    therefore she should be limited to 1-10 hours of work per week.  AR at 254.  In response to a

4    question about whether plaintiff's condition limited her ability to prepare for and look for

5    work, he wrote, "Mood improved.  Meds more stable."  AR at 254.  He described plaintiff's

6    treatment plan as "medication," and wrote that her "mood" and "anxiety" need further

7    evaluation.  AR at 255.

8            The ALJ gave "little probative weight" to Mr. Jackson's opinion because "Mr. Jackson

9    treated the claimant, but his conclusion that she could only work 1-10 hours per week is

10   inconsistent with his note that her mood had improved and she was more stable with

11   medications.  He gave no clinical findings to support his opinion."  AR at 22.  In addition, the

12   ALJ asserted that "his treatment notes do not contain clinical findings to support a conclusion

13   that the claimant could not maintain full-time work.  Mr. Jackson's treatment notes indicate

14   that the claimant's mood improved with medication management, and that she consistently

15   presented as clean, neat, and cooperative, with linear thought process."  AR at 22.  For

16   virtually identical reasons, the ALJ also rejected Mr. Jackson's September 2010, January 2011,

17   and February 2012 DSHS reports.  AR at 22.

18           Plaintiff contends that the ALJ erred by rejecting Mr. Jackson's assessment because his

19   clinical findings were inconsistent with his assessment that she could not work full time.  Dkt.

20   16 at 13 (citing AR at 22).  Specifically, plaintiff argues that "while there were some treatment

21   notes indicating that Ms. Lawson's condition had stabilized, those notes are juxtaposed by

22   multiple other notes indicating severe, ongoing symptoms, including clinical observations that

23   she was depressed, sad, anxious and irritable.  *Id.* (citing AR at 221-23, 227, 229, 231, 233,

24   249, 250-51, 257, 364, 365-66, 372-73).

REPORT AND RECOMMENDATION - 22

1    The Commissioner reiterates that "even a doctor's opinion need not be accepted if that

2    opinion is brief, conclusory, and inadequately supported by clinical findings." Dkt. 17 at 11

3    (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Furthermore, "an ALJ may

4    reject even a doctor's opinion that is based on inconsistencies in his or her reports." *Id.* (citing

5    *Morgan*, 169 F.3d at 603). The Commissioner asserts that in determining the weight to give to

6    an other source opinion, such as the opinion of a nurse practitioners, the ALJ may also consider

7    the  degree to which the source presents relevant evidence to support an opinion and the ALJ

8    may consider how well the source explains the opinion. *Id.* at 12 (citing SSR 06-03p at *4).

9    The Commissioner contends that the plaintiff disagrees with the ALJ's weighing of the

10   evidence with respect to Mr. Jackson's opinions, but that is an insufficient basis to overturn the

11   ALJ's decision. *Id.*

12   The ALJ provided at least one germane reason for discounting Mr. Jackson's opinions.

13   Mr. Jackson's August 3, 2011 DSHS assessment form was brief, conclusory, and contained no

14   explanation or clinical findings to support his opinion that plaintiff could only work one to ten

15   hours per week. In addition, Mr. Jackson does not explain the inconsistency between his

16   statements that plaintiff could only work one to ten hours per week, on the one hand, and that

17   her mood has improved and her medications have become more stable, on the other. AR at

18   254. As discussed above with respect to Ms. Wambold's opinions, although plaintiff argues

19   that the ALJ should have interpreted Dr. Jackson's treatment notes more favorably, plaintiff

20   also concedes that some of Dr. Jackson's "treatment notes indicat[ed] that Ms. Lawson's

21   condition had stabilized[.]" Dkt. 16 at 13. It is the role of the ALJ to resolve conflicts in

22   testimony, and when the evidence is susceptible to more than one rational interpretation, it is

23   the Commissioner's conclusion that must be upheld. Accordingly, the ALJ did not err in

24   evaluating Mr. Jackson's opinions.

REPORT AND RECOMMENDATION - 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

C.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility

        1.     *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

REPORT AND RECOMMENDATION - 24

2.      *The ALJ Provided Clear and Convincing Reasons for Finding Plaintiff Less Than Fully Credible*

The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR at 20. However, the ALJ did not "find all of the claimant's symptoms allegations to be credible . . . for the following reasons." AR at 20. Specifically, the ALJ found plaintiff's allegations of disabling limitations to be inconsistent with (1) a number of objective clinical findings, (2) the improvement and stabilization of plaintiff's symptoms with treatment, (3) plaintiff's daily activities and recent travel, and (4) evidence of secondary gain motivation. AR at 20-21.

(a)      *Objective clinical findings*

Plaintiff contends that Ninth Circuit precedent clearly holds that "it was not proper for the ALJ to reject the claimant's subjective complaints with vague assertions that they are unsupported by the evidence." Dkt. 16 at 18. The Commissioner responds that the ALJ reasonably rejected plaintiff's subjective complaints, in part, because they were "inconsistent with a number of clinical findings," AR at 20, and the ALJ identified examples of objective evidence from the record which he believed undermined plaintiff's complaints. Dkt. 17 at 16. For example, the ALJ noted that although plaintiff has "presented with a flat affect and depressed mood . . . she also has presented as clean and appropriately dressed, with normal eye contact, intact attention and concentration, and normal speech" and has not complained of "ongoing angry outbursts to treatment providers. AR at 20-21 (citing AR at 221, 224, 247, 251, 289, 295). The ALJ also pointed to plaintiff's performance on her mental status examination conducted by Dr. Jones in July 2011 as clinical findings that "support a conclusion that the claimant could perform at least simple, repetitive tasks in a work environment with social limitations." Dkt. 17 at 16 (citing AR at 21, 238).

REPORT AND RECOMMENDATION - 25

1    The ALJ did not err by rejecting plaintiff's testimony based, in part, upon the fact that it

2    was unsupported by this objective medical evidence. The Ninth Circuit has asserted that

3    although "subjective pain testimony cannot be rejected on the sole ground that it is not fully

4    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

5    determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari,*

6    261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir.

7    2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain

8    testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3

9    (the ALJ "must consider the entire case record, including the objective medical evidence" in

10   determining credibility, but statements "may not be disregarded solely because they are not

11   substantiated by objective medical evidence"). Thus, inconsistency between plaintiff's

12   allegations and the objective medical evidence was a relevant factor for the ALJ to consider,

13   among others, in determining plaintiff's credibility. The ALJ also met his burden of "stat[ing]

14   which pain testimony is not credible and what evidence suggests the claimants are not

15   credible." *Dodrill,* 12 F.3d at 918; *see also Holohan,* 246 F.3d at 1208 ("[T]he ALJ must

16   specifically identify the testimony she or he finds not to be credible and must explain what

17   evidence undermines the testimony.").

18              (b)      *Improvement and stabilization of symptoms with treatment*

19   The ALJ also rejected plaintiff's subjective complaints because "the record supports a

20   finding that the claimant's symptoms have improved and stabilized with treatment." AR at 21

21   (citing AR at 223, 224, 228, 230, 233, 298, 362). The ALJ then cited to evidence in the record

22   showing that plaintiff's "mood improved with medication management," and although "in

23   April of 2012, she reported suicidal ideation without attempt after her grandmother passed

24   away . . . she started counseling [and] [b]y July of 2012, she was reporting that she was 'doing

1    really good overall' and was on less medication." AR at 21. Similarly, in August 2012, "she

2    reported she was doing well with medications, her mood was stable, she had no anxiety, she

3    was doing O.K. with clonazepam, and her sleep was good." AR at 21.

4         The Ninth Circuit has recognized that responding favorably to conservative treatment

5    supports rejection of claims of disabling pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40

6    (9th Cir. 2008). *See also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("We have

7    previously indicated that evidence of 'conservative treatment' is sufficient to discount a

8    claimant's testimony regarding severity of an impairment."). Thus, the ALJ did not err by

9    finding that "the record supports a finding that the claimant's symptoms have improved and

10   stabilized with treatment." AR at 21. This was a clear and convincing reason, supported by

11   substantial evidence, to discount plaintiff's subjective complaints.

12                    (c)    *Daily activities*

13        The ALJ also noted that "the record reflects little evidence regarding the claimant's

14   daily activities. It does not contain a function report from the relevant time period." AR at 21.

15   The ALJ observed that "[d]uring [the] consultative psychological exam in July of 2011, the

16   claimant reported that she struggled with daily activities such as cleaning, cooking, yard work,

17   and shopping. However, she reported that she was able to drive, and was spending most of her

18   time taking care of her children. She reported that she is the primary caregiver for two

19   children, ages 11 and 3." AR at 21. As discussed above, the ALJ also pointed to plaintiff's

20   testimony that "daily childcare involves feeding, bathing, and dressing the children, and soon

21   she will be taking her oldest child back and forth to school." AR at 21. Although plaintiff

22   lives with her mom and "her mom provides some help with children . . . her mother also works

23   at home for Alaska Airlines." AR at 21. The ALJ concluded that "this evidence supports a

24

1    finding that the claimant could sustain at least simple, repetitive work in an environment with

2    some social limitations."  AR at 21.

3         The ALJ also observed that "notes from January of 2011 are inconsistent with the

4    claimant report regarding significantly limited daily activities.  At that time, the claimant

5    reported she had been 'flying' a lot over the past two years, with flights sometimes as long as

6    5-6 hours, and her last flight being to New Orleans in June of 2010, which was approximately

7    5 hours."  AR at 21.

8         Plaintiff contends that "the ALJ erred in asserting that Ms. Lawson's activities of daily

9    living are inconsistent with her alleged limitations.  Ms. Lawson does little other than care for

10   her children at home."  Dkt. 16 at 18.  Here, "the ALJ repeatedly asserted that her ability to

11   care for her kids at home demonstrates an ability to perform simple, repetitive tasks . . . Her

12   ability to care for her children at home does not demonstrate an ability to sustain a full time

13   work schedule."  *Id.* Plaintiff asserts that the fact that a plaintiff has carried on certain daily

14   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

15   any way detract from her credibility as to her overall disability.  *Id.* at 18-19 (citing *Fair v.*

16   *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

17        The Commissioner responds that where everyday activities of daily living suggest some

18   difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

19   extent that they contradict claims of a totally disabling impairment.  Dkt. 17 at 18 (citing

20   *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)).  Although plaintiff takes issue with the

21   ALJ's reliance on her activity of taking care of her children as a basis to find her subjective

22   complaints not entirely credible, the Commissioner argues that the Ninth Circuit has found that

23   the ability to care for a child is evidence of a claimant's ability to work.  *Id.* (citing *Molina*, 674

24   F.3d at 1113 ("the ALJ could reasonably conclude that Molina's activities, including walking

REPORT AND RECOMMENDATION - 28

her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering debilitating panic attacks."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ properly found that the claimant's claim of totally disabling pain was undermined by her testimony about her activities, such as attending to the needs of her two young children); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for a friend's child was evidence of claimant's ability to work)).  In addition, an ALJ may properly infer from the fact that a claimant is able to travel that he or she is not as limited has he or she purported to be. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly relied, in part, upon a claimant's ability to travel to Venezuela for an extended time as a clear and convincing reason to discount the plaintiff's credibility).

Activities that are engaged in by a claimant that are inconsistent with a claimed level of impairment are a proper basis upon which to formulate an adverse credibility determination. 20 C.F.R. § 404.1529(c)(i).  *See Molina v. Astrue,* 674 F.3d at 1112–13.  As argued by the Commissioner, the ALJ did not err by citing plaintiff's ability to serve as her young children's primary caregiver, including feed, bathing, and dressing the children, and her ability to take long flights and travel "a lot" as clear and convincing reasons for finding plaintiff less than credible. *See Tommasetti*, 533 F.3d at 1040; *Rollins*, 261 F.3d at 857.

(d)    *Evidence of secondary gain motivation*

Finally, the ALJ found plaintiff's subjective complaints not entirely credible because "in April of 2012, she reported that she 'wants employment but wants to obtain her social security first.'"  AR at 21, 284.  An ALJ may properly consider a claimant's "motivation to obtain Social Security benefits" as a factor that undermined the credibility of her subjective

REPORT AND RECOMMENDATION - 29

complaints. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's reliance on plaintiff's secondary gain motivation in this context was proper. Accordingly, the ALJ has provided several clear and convincing reasons for finding plaintiff less than fully credible, and these reasons are supported by substantial evidence in the record.

> D.      The ALJ Did Not Err at Step Five

Plaintiff's remaining assignment of error is essentially a restatement of her previous arguments regarding the medical evidence in this case. Specifically, plaintiff contends that "the ALJ's hypothetical was incomplete because it failed to include the limitations assessed by the claimant's treating, examining, and reviewing medical providers, specifically with regard to her inability to sustain a normal work schedule and maintain a regular work pace. On cross-examination, the vocational expert testified that these limitations, particularly the need for unscheduled absences, would preclude competitive employment . . . [because] during the first year of employment for un-skilled and semi-skilled workers, there is no tolerance for absenteeism." Dkt. 16 at 14 (citing AR at 41-44). The VE stated that "there would be no jobs in the regional or national economy that would fit the ALJ's hypothetical of missing one half day per month during the first year of employment." *Id.* (citing AR at 43). Although the ALJ stated in the written decision that "the record does not support a finding that the claimant would have unscheduled absences," AR at 25, plaintiff argues that "to the contrary, the evidence establishes that Ms. Lawson would miss at least one day per month if she were employed." Dkt. 16 at 15. Plaintiff points to the decisions of Ms. Wambold, Dr. Jones, Mr. Jackson, and Dr. Harrison as suggesting that plaintiff would miss some work in her first year.

The Commissioner responds that the ALJ's hypothetical question posed to the vocational expert was not incomplete simply because it did not include the limitations assessed by her treating, examining, and reviewing providers. Rather, the Commissioner asserts that

REPORT AND RECOMMENDATION - 30

1    because the ALJ properly rejected the opinions of Ms. Wambold, Dr. Jones, Mr. Jackson, and

2    Dr. Harrison, the ALJ was not required to incorporate their opinions in determining plaintiff's

3    ability to work.  Dkt. 17 at 21 (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d

4    1190, 1197-98 (9th Cir. 2004) (ALJ was not required to incorporate evidence that was properly

5    discounted)).  Although the ALJ's hypothetical question to the vocational expert included

6    unscheduled absences amounting to one half day per month, the ALJ later declined to include

7    this finding in the RFC in this case.  Specifically, the ALJ explained in his decision that "the

8    medical record does not support a finding that the claimant would have unscheduled absences,

9    and that limitation does not appear in the [RFC] set out in this decision."  AR at 25.  As a

10   result, the Commissioner contends that "the vocational expert's testimony in response to an

11   assumed limitation about unscheduled absences of one half day per month does not warrant a

12   finding of disability."  Dkt. 17 at 22.

13          Because the Court has affirmed the findings of the ALJ as to plaintiff's prior

14   assignments of error, it must also conclude that the ALJ did not err in determining plaintiff's

15   RFC or posing the hypothetical question to the vocational expert.  Plaintiff has pointed to no

16   credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ,

17   establishing the additional limitations that she believes should have been included in the RFC

18   assessment and hypothetical question to the vocational expert.  As discussed above, although

19   the ALJ's hypothetical question included unscheduled absences amounting to one half day per

20   month, the ALJ later explained in his decision that "the medical record does not support a

21   finding that the claimant would have unscheduled absences, and that limitation does not appear

22   in the [RFC] set out in this decision."  AR at 25.  Thus, the ALJ reasonably concluded, based

23   on the rest of the vocational expert's testimony during the hearing, that plaintiff could perform

24   other jobs existing in significant numbers in the national economy.  Plaintiff has not

REPORT AND RECOMMENDATION - 31

1  demonstrated any error by the ALJ at step five.  *See Bayliss*, 427 F.3d 1211, 1217-18 (9th Cir.

2  2005) (recognizing that an ALJ must include all limitations supported by substantial evidence

3  in a hypothetical question to the vocational expert, but may exclude unsupported limitations

4  and disregard VE testimony premised on such limitations).

5                                        VIII.    CONCLUSION

6          For the foregoing reasons, the Court recommends that the final decision of the

7  Commissioner be AFFIRMED, and this case DISMISSED with prejudice.  A proposed order

8  accompanies this Report and Recommendation.

9          DATED this 13th day of September, 2013.

10

11                                                    _____
                                                      JAMES P. DONOHUE
12                                                    United States Magistrate Judge

13

REPORT AND RECOMMENDATION - 32