THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMANDA M. LAWSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　Defendant. | CASE NO. C13-5049-JCC<br><br>ORDER |

The Court, having reviewed Plaintiff's Complaint (Dkt. No. 3), the report and recommendation ("R&R") of U.S. Magistrate Judge James P. Donohue (Dkt. No. 19), Plaintiff's objections (Dkt. No. 20), and the remaining record, ADOPTS IN PART the report and recommendation and REMANDS the case for further proceedings.

## I.  BACKGROUND

Plaintiff's application for supplemental security income was denied at the initial level and on reconsideration. Following a hearing on August 16, 2012, the administrative law judge ("ALJ") found Plaintiff not disabled. The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision subject to judicial review. 20 C.F.R. §§ 416.1481, 422.210.

Plaintiff sought this Court's review. In a report dated September 13, 2013, Magistrate Judge Donohue recommended affirming the decision of the ALJ. (Dkt. No. 19.) Plaintiff objects

to the R&R. (Dkt. No. 20.) Plaintiff's objections relate to the ALJ's evaluation of the opinions of examining psychologist Shannan Jones, Ph.D.; non-examining physicians Kristine Harrison, Psy.D. and Michael Brown, Ph.D.; treating psychotherapist Jessica Wambold, M.A., M.H.C.; and treating nurse practitioner Michael Jackson, A.R.N.P. Plaintiff also objects to the R&R's conclusions that the ALJ properly found Plaintiff less than fully credible, and that the ALJ's hypothetical for the vocational expert was free of error. This Court disagrees with the Magistrate Judge only about the opinion of Dr. Harrison and the hypothetical for the vocational expert, so discusses those two issues last.

## II. DISCUSSION

The Court reviews de novo the sections of a magistrate judge's report or recommendations to which a party objects. 28 U.S.C. § 636(b)(1). The Court will not overturn the Commissioner's final decision if it is supported by substantial evidence. *See* 42 U.S.C. §405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). It need not be a preponderance of the evidence but must be more than a mere scintilla. *See id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)).

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *See Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)). An ALJ may reject the opinion of a physician if it is conclusionary, brief, and unsupported by clinical findings. *See Magallanes*,

881 F.2d at 751.

The opinion of a nonexamining medical source is given less weight than the opinion of a treating or examining doctor. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Even so, an ALJ may not ignore these sources and must explain the weight given to the opinion. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *2. An ALJ may reject the opinion of a nonexamining doctor by referring to specific evidence in the record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Id.*; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's credibility findings must be supported by specific, cogent reasons. *See Gregor v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

### A. Plaintiff's Objections

#### 1. Dr. Jones' Opinion

Dr. Jones conducted a psychological evaluation of Plaintiff at which she performed a mental status examination. (Dkt. No. 19 at 8.) Both the ALJ and the Magistrate Judge detailed Dr. Jones' findings, which are not repeated here. (Dkt. No. 10-2 at 22, 24; Dkt. No. 19 at 8–10.) In short, Dr. Jones concluded that Plaintiff could not maintain a regular work schedule or complete a normal work day without interruptions. The ALJ gave Dr. Jones' opinion little weight because it was inconsistent with her clinical findings, Plaintiff's reported daily activities, and "the record as a whole, which indicates that the claimant's mood improved and stabilized with treatment." (Dkt. No. 10-2 at 24.)

Plaintiff argues that the ALJ provided no example of the alleged inconsistency between Dr. Jones' opinion and her clinical findings. (Dkt. No. 20 at 2.) In particular, Plaintiff disagrees with the ALJ's conclusion that Plaintiff could perform simple, repetitive tasks and argues that the ALJ failed to explain how caring for children is inconsistent with Dr. Jones' opinion. (Dkt. No. 20 at 2–3.) Plaintiff also argues that it is simply incorrect to say that her impairments were

controlled with medication because the improvement was merely "isolated periods of improvement . . . of limited duration and the record does not show any extended periods of stabilization or effective control of all limitations with the medication." (Dkt. No. 20 at 3.)

The Court agrees with the R&R that the ALJ provided several specific and legitimate reasons to discount Dr. Jones' opinions. The ALJ discussed in detail the results of Dr. Jones' psychological examination. Based on this detailed consideration, the ALJ recognized that, despite some difficulty remaining focused, the claimant "did not have any difficulty tracking simple or complex ideational material," "displayed [an] adequate fund of knowledge," and "was cognitively intact on [the] mental status exam." (Dkt. No. 10-2 at 22.)

The ALJ also provided specific findings showing Dr. Jones' opinion was inconsistent with Plaintiff's report of her daily activities and the record as a whole. The ALJ noted that as of January 2011 Plaintiff had traveled "a lot over the past two years, with flights sometimes as long as 5–6 hours." (Dkt. No. 10-2 at 22.) The ALJ recognized that Plaintiff reported being able to drive and caring for two children, which involved feeding, bathing, and dressing them, and taking her oldest child to and from school. (Dkt. No. 10-2 at 22.) Although the ALJ recognized that Plaintiff's mother "provides some help," her mother also works from home so Plaintiff is the primary caregiver. (Dkt. No. 10-2 at 22.)

Plaintiff recognizes that both the ALJ's opinion and the R&R cite these activities but argues that neither "state which activities undermined the report of Dr. Jones." (Dkt. No. 20 at 3.) The R&R, however, gave a detailed and thorough analysis of the inconsistencies the ALJ identified (Dkt. No. 19 at 13–15), with which this Court agrees. Plaintiff's objection appears to amount merely to a disagreement with the ALJ's weighing of the evidence. The ALJ noted that the record lacked a function report and there was little evidence about Plaintiff's daily activities. (Dkt. No. 10-2 at 22.) Based on the evidence presented, which the ALJ discussed, the ALJ concluded that that Plaintiff "could sustain at least simple, repetitive work," contrary to Dr. Jones' opinion. (Dkt. No. 10-2 at 22.) This Court agrees with the thorough discussion in the

R&R and concludes that these activities—which demonstrate an ability to maintain a routine, meet the needs of others, leave the house on a regular basis, and interact with others—constitute substantial evidence supporting the ALJ's determination.

The ALJ also concluded that Dr. Jones' opinion was inconsistent with evidence in the record that "indicate[d] that the claimant's mood improved and stabilized with treatment." (Dkt. No. 10-2 at 24.) The ALJ discussed a number of treatment records in reaching this conclusion. (Dkt. No. 10-2 at 22.) Plaintiff cites a number of treatment records that she believes demonstrate otherwise. (Dkt. No. 20 at 5.) But these records paint a much more mottled picture than Plaintiff suggests. Indeed, many of the records she cites support the conclusion that her mood was helped with medication. For example, a March 8th report stated that Plaintiff's mood was "not good since [she] ran out of wellbutrin." (Dkt. No. 10-7 at 223.) A May 21st report stated that she was angry and sad, but noted she had been out of medication for three months. (*Id.* at 233). Similarly, a report that described her mood was "horrible" also recognized she was "out of meds" and stated that the medication had previously been working. (*Id.* at 228.) In June 2011, Mr. Jackson noted "some depression" and that Plaintiff was "worried about child support" but described how medication had helped and described her mood as "good." (*Id.* at 251.) These are only the records that Plaintiff herself cites: other records, which Plaintiff does not cite, also suggest that she was "better" with medication. (*Id.* at 230.)

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Magallanes*, 881 F.2d at 751. The ALJ's conclusion to discount Dr. Jones' testimony was supported by substantial evidence; Plaintiff's attempts to show otherwise only confirm this conclusion.

### 2. Dr. Brown's Opinion

Dr. Brown is a state agency psychologist who concluded that Plaintiff could "perform simple, repetitive tasks, as well as detailed and complex tasks" but would have "some moderate limitations in concentration and persistence." (Dkt. No. 10-2 at 23.) The ALJ gave his opinion

only some weight because Dr. Brown "did not fully specify those limitations in the narrative portion of his opinion." (Dkt. No. 10-2 at 23.) The R&R did not discuss Dr. Brown's conclusion. Plaintiff implies that the R&R should have addressed Dr. Brown's opinion because Plaintiff argued in her opening brief that the ALJ improperly rejected it. (Dkt. No. 20 at 4.) Plaintiff's opening brief, however, merely described Dr. Brown's findings and argued that Dr. Jones' assessment was consistent with them. (Dkt. No. 16 at 5, 10). Neither of these arguments addresses the ALJ's determination that Dr. Brown's description of "moderate" limitations was vague. Even assuming that Plaintiff has preserved her objection, the Court concludes that the ALJ could appropriately give only some weight to an opinion that described "moderate" limitations without elaborating on those limitations.

### 3. The ALJ Improperly Rejected Ms. Wambold's Opinion

An ALJ may reject the opinion of a treating psychotherapist by providing germane reasons for doing so. *See Turner v. Comm'r of the Soc. Sec. Admin.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010); 20 C.F.R. §§416.913(d)(1).

Jessica Wambold, Plaintiff's treating psychotherapist, provided a July 2012 assessment concluding that Plaintiff would miss four or more days of work each month. (Dkt. No. 10-2 at 24.) The R&R found that the ALJ had provided a germane reason for discounting Ms. Wambold's opinion because Ms. Wambold's medical source statement was brief, conclusory, and lacked any explanation or clinical findings to support the check-the-box functional limitations she identified, including the estimate of missing four or more days of work per month. (Dkt. No. 19 at 20.) Plaintiff objects that her opening brief provided numerous examples of clinical findings supporting Ms. Wambold's opinion.

Not only does this Court agree that Ms. Wambold's opinion was brief and conclusory, but the Court disagrees that Plaintiff's examples necessarily support Ms. Wambold's opinion. For example, Plaintiff relies heavily on Ms. Wambold's notes around the time that Plaintiff's grandmother died. (Dkt. No. 16 at 6.) But within a few months of that traumatic event, the ALJ

noted that "[Plaintiff] reported she was doing well with medications, her mood was stable, [and] she had no anxiety." (Dkt. No. 10-2 at 22; Dkt. No. 10-9 at 10.) Although Plaintiff notes that Ms. Wambold's May notes describe Plaintiff as anxious and fidgety, Plaintiff ignores that they also state that she had not had medicine that day. (AR 296.) Similarly, Plaintiff emphasizes that Ms. Wambold described Plaintiff as "anxious" during June and July visits, but as the ALJ noted, Plaintiff also described herself as "doing really good overall." (Dkt. No. 10-2 at 22, Dkt. No. 10-7 at 93.)

As the Magistrate Judge concluded after a thorough analysis, with which this Court agrees, this evidence is susceptible to more than one rational interpretation. (Dkt. No. 19 at 19–21.) The Court thus agrees that the ALJ provided sufficient support for discounting Ms. Wambold's statement.

### 4. Mr. Jackson's Opinion

Michael Jackson, a nurse practitioner, provided several Department of Social and Health Services (DSHS) assessments. The Court agrees with the R&R that the ALJ could appropriately discount Mr. Jackson's opinion as reflected in his 2011 DSHS assessment as brief, conclusory, and lacking supporting explanation or opinions for the conclusion that plaintiff could work only one to ten hours per week. (Dkt. No. 19 at 23.) Further, the ALJ recognized that Mr. Jackson provided contradictory reports about whether Plaintiff could attend vocational classes, which provides another reason to discount his opinion. (Dkt. No. 10-2 at 23.)

Plaintiff argues that the "majority of Jackson's treatment records show depression, anxiety, irritability, and sadness, which are supportive of his opinions." (Dkt. No. 20 at 5.) Plaintiff does not acknowledge the Magistrate Judge's reasoning that Plaintiff herself recognizes that "some treatment notes indicat[e] that Ms. Lawson's condition had stabilized." (Dkt. No. 19 at 23.) Yet this is the important point: the treatment records are susceptible to more than one rational interpretation. For example, one report described "some days of depression" and noted that "usually depression lasts all day," but also stated "mood good," "energy good," and

"enjoyment good." (*Id.* at 222.) Reports describing severe symptoms of depression are from April 2012, immediately after Plaintiff's grandmother died and during a period when the ALJ acknowledged that Plaintiff had reported suicidal ideation. (Dkt. No. 10-2 at 22.) As the ALJ recognized, with medication and counseling, Plaintiff improved significantly over the following months. (Dkt. No. 10-2 at 22.) The ALJ could properly conclude that records showing improvement with medication undermined Mr. Jackson's opinion. Further, the ALJ noted that Plaintiff "presented as clean, neat, calm, and cooperative, with linear and coherent thought content" (Dkt. No. 10-2 at 22), a conclusion supported by the many reports describing Plaintiff as "calm, cooperative, alert, [and] oriented." (*See, e.g.*, Dkt. No. 10-7 at 250, 251, 364.) *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ relied on specific facts in deeming an opinion unreasonable, including that the examiner had "assessed [the claimant] as engaging and cooperative, with a sense of humor and a good ability to express himself"). The Court therefore concludes that the ALJ's determination was properly supported and the records Plaintiff points to do not undermine that conclusion.

### 5. Plaintiff's Testimony

To find a claimant's testimony unreliable, an ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2008). A finding that a claimant lacks credibility must be supported by specific, clear, and convincing reasons. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Plaintiff argues that if the ALJ's reasoning about her credibility is accepted, then no claimant caring for young children could ever be denied benefits. (Dkt. No. 20 at 7.) This objection fails to account for the ALJ's discussion of Plaintiff's particular claims and activities. The ALJ described her specific claims, which included that she has difficulty being around people, that she has angry outbursts that would probably get her in trouble at a job, and that she needs to lie down and rest for about half the day. (Dkt. No. 10-2 at 21–22.) The ALJ concluded

that these claims were inconsistent with her reported activities, including driving and childcare (feeding, bathing, and dressing her children, and transporting her oldest child to and from school), and her January 2011 reports of flying a lot in the previous two years. (Dkt. No. 10-2 at 20.) *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly drew inference about extent of limitation from claimant's extended travel to care for an ailing sister). The ALJ also noted that Plaintiff's medical records reflected no reports of her having angry outbursts. (Dkt. No. 10-2 at 22.)

Plaintiff's further arguments about the ALJ's credibility finding repeat objections made in her opening brief and arguments discussed above, such as whether her condition stabilized with treatment. The Court agrees with the Magistrate Judge Donohue's thorough and cogent reasoning assessing these objections and finding that the ALJ provided clear and convincing reasons for finding Plaintiff less than fully credible.

### 6. Dr. Harrison's Opinion

An ALJ may reject the opinion of a non-examining doctor by referring to specific evidence in the record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Dr. Kristine Harris is a state agency psychologist. (Dkt. No. 10-2 at 23.) Dr. Harrison stated:

> File data show Client moods generally well controlled with use of Psych TX, with deterioration of function when goes off her Psych TX. Although she may have some bad days where [she] will need to miss work, there is no certainty that those missed days would necessarily be beyond the acceptable limit and that she could indeed maintain employment.

(Dkt. No. 10-3 at 16.) The ALJ found that this was "somewhat vague" because it "did not quantify the amount of time the claimant might miss." (Dkt. No. 10-2 at 23.) Plaintiff argues that she has shown evidence supporting at least one day of missed work each month, including "the opinion of Dr. Harrison, the number of mental health appointments attended, and periods of depression." (Dkt. No. 20 at 4.) The Commissioner argues that this is simply a disagreement about the credibility of medical evidence, which it is the ALJ's responsibility to resolve. (Dkt.

No. 17 at 15.)

The Court first notes that the number of mental health appointments attended does not bear on the question of whether she will have *unscheduled* absences. The concern is not scheduled absences, but unscheduled absences. And periods of depression do not in themselves demonstrate that she would necessarily miss work.

The Court, however, concludes that the ALJ did not provide specific reasons to reject Dr. Harrison's statement. Dr. Harrison's opinion may be vague with respect to whether Plaintiff will miss one day or two days or merely part of a day each month, but the opinion is not vague about whether Plaintiff will miss some work over the course of a year. The ALJ gave no further specific reasons for concluding that, contrary to Dr. Harrison's opinion, Plaintiff would miss no work; instead the ALJ merely gestured broadly at "the medical record, [which] does not support a finding that the claimant would have unscheduled absences." (Dkt. No. 10-2 at 26.) With no conflict in the testimony, as no opinion stated that the Plaintiff would miss no work, the record was insufficiently developed to dismiss Dr. Harrison's opinion as vague. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ could not reject an uncontroverted and corroborated opinion on a basis that ALJ failed to develop fully); *cf. Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (contrary opinions "provide[d] assurance that the record was sufficiently developed with regard to the [relevant] issue"). Dr. Harrison's statement is not only vague about the extent of any absences, but it is ambiguous because it is unclear whether she is talking about scheduled or unscheduled absences and whether she was assuming that Plaintiff would or would not be taking medication.

### 7. The ALJ Failed to Identify Specific Jobs

In determining whether a claimant can perform other work existing in significant numbers in the national economy, an ALJ may rely on the testimony of a vocational expert. If the ALJ poses a hypothetical to a vocational expert, that hypothetical must depict claimant's impairments in a manner that is "accurate, detailed, and supported by the medical record."

*Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "The limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.'" *Magallanes*, 881 F.2d at 757 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). "If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

Here, as described above, the ALJ did not provide a specific reason for rejecting Dr. Harrison's ambiguous opinion. Indeed, the ALJ's original hypothetical to the vocational expert included a limitation of "half-day per month"—seemingly a recognition that some evidence suggested that Plaintiff might miss work. It was only on cross-examination that the vocational expert stated that no work could be missed during the first year. (Dkt. No. 10-2 at 26.) In this situation, the record did not adequately "allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *cf. Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986) ("Although there is some conflicting evidence, clearly, the weight of medical evidence supports the hypothetical questions posed by the ALJ.").

Instead, Dr. Harrison's ambiguous evidence triggered the ALJ's duty to further develop the record to determine how much work Plaintiff would need to miss in the first year and properly include that determination in a hypothetical posed to the vocational expert. *See Smolen*, 80 F.3d at 1288 (ALJ has duty to fully develop the record); *Tonapetyan,* 242 F.3d at 1150 (ambiguous evidence triggers duty). The Court therefore remands for proceedings consistent with this determination. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

### III. CONCLUSION

For the foregoing reasons, the Report and Recommendation (Dkt. No. 19) is ADOPTED

1  IN PART and the case is REMANDED for further administrative proceedings. On remand, the

2  ALJ should further develop the record about how much work Plaintiff would be expected to miss

3  and reassess the step-five findings in light of that determination.

4  DATED this 20th day of November 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE